PETER C. ERBLAND, ISBA #2456
perbland@lclattorneys.com
KATHARINE B. BRERETON, ISBA #9583
kbrereton@lclattorneys.com
LAKE CITY LAW GROUP PLLC
435 W. Hanley Ave., Suite 101
Coeur d'Alene, ID 83815
Telephone: 208.664.811528
Facsimile: 208.664.6338

Christopher W. Cardwell, TSBA # 019751 (*pro hac vice* forthcoming)
Mary Taylor Gallagher, TSBA # 021482 (*pro hac vice* forthcoming)
M. Thomas McFarland, TSBA # 033432 (*pro hac vice* forthcoming)
**GULLETT SANFORD ROBINSON & MARTIN, PLLC**
150 Third Ave. South, Suite 1700
Nashville, TN  37201
615.244.4994 (Telephone)
615.256.6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NUVASIVE, INC. & <br> NEXUS SURGICAL INNOVATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATT ROBINS, <br><br> Defendant. | Case No. _____ <br><br><br> **COMPLAINT** |

Through undersigned counsel, and for their Complaint against Defendant, Matt Robins ("Defendant"), Plaintiffs, NuVasive, Inc. ("NuVasive") and neXus Surgical Innovations, Inc. ("neXus" or "neXus Surgical"), state that:

**COMPLAINT - 1**

## NATURE OF ACTION

1. This Complaint arises from Defendant's violations of his contractual obligations not to compete with NuVasive and neXus within his former Eastern Washington/Northern Idaho sales territory and not to solicit those customers he serviced on NuVasive's and neXus' behalf. After abruptly quitting his job with neXus – that consisted of selling NuVasive's products and services and supporting surgeries in which those products and services are used – without providing notice, Defendant joined NuVasive's direct competitor, Alphatec Spine, Inc. ("Alphatec") and immediately began supporting and soliciting at least one physician within his former neXus/NuVasive sales territory.

2. NuVasive and neXus bring this action to enjoin the Defendant's wrongful conduct and recover damages for the harm his wrongful conduct caused them.

## THE PARTIES

3. NuVasive, a Delaware corporation based in San Diego, California, is a medical device company focused on the design, development and marketing of products for surgically treating spine disorders.

4. NuVasive markets its products through its exclusive sales force consisting of directly employed personnel and exclusive sales agents. One such exclusive sales agent is neXus, a Washington corporation based in Spokane, Washington. neXus' territory encompasses part or all of Washington, Montana, Utah, Wyoming, and Idaho.

5. Defendant resides in Coeur d'Alene, Idaho. He worked for neXus, first as a Spine Associate and then as a Spine Specialist, from January 7, 2019, to, May 31, 2020, when he went to work for Alphatec. Defendant had no experience in medical device sales prior to his neXus employment.

**COMPLAINT - 2**

6. For at least the last year, Defendant's neXus/NuVasive sales territory consisted solely of the following four medical facilities (as well as all of the spine surgeons who operate at those facilities):

- MultiCare Deaconess Hospital in Spokane, Washington;
- MultiCare Valley Hospital in Spokane, Washington;
- Northwest Specialty Hospital in Post Falls, Idaho; and
- Kootenai Medical Center in Coeur d'Alene, Idaho.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

8. Venue is proper in the District of Idaho pursuant to 28 U.S.C. § 1391(a), as Defendant resides in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the district.

## ALLEGATIONS RELATING TO ALL COUNTS

9. The spinal hardware industry is highly competitive. Industry participants entrust their sales representatives with confidential and proprietary information, give them access to their established customers, and often provide them with proprietary training. Accordingly, the industry's standard and practice is to require sales representatives to sign noncompetition and/or nonsolicitation agreements upon hire. Indeed, Defendant's new employer, Alphatec, requires its sales representatives to sign noncompete agreements as a condition of their engagements.

10. As noted in his December 18, 2018, offer letter (the "Offer Letter"), Defendant – who had no prior experience in medical device sales – began working for neXus as a Spine

**COMPLAINT - 3**

Associate in Salt Lake City, Utah, on or about January 7, 2019.  Plaintiffs attach a copy of the Offer Letter as **Exhibit A**.

11.     Pursuant to neXus' and NuVasive's established policies, and in accord with industry standard, Defendant, as a condition of his employment, and in consideration for his employment, compensation, and other good and valuable consideration, signed and agreed to a "Confidential Information, Inventions, Nonsolicitation and Noncompetition Agreement" (the "Agreement").  Plaintiffs attach a true and correct copy of the Agreement, which Washington law governs, as **Exhibit B**.

12.     The Offer Letter explicitly referenced the Agreement, and neXus enclosed a copy of the Agreement with the Offer Letter.  After receiving these documents, Defendant accepted employment on December 20, 2018.

13.     The Agreement imposes certain reasonable post-employment obligations on Defendant, including duties of noncompetition and nonsolicitation, which are contained in Section 4.2.  This section provides:

> During the Term and for one year after the end of the Term, I will not represent, promote or otherwise try to sell within any territory I served for neXus Surgical any lines or products that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory and I will not solicit (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory.  The one (1) year, post-employment period during which the restrictions of this Section are applicable shall toll for any period of time in which I am not in compliance with my obligations.

14.     The nonsolicitation and noncompetition provisions are reasonably designed to protect neXus' and NuVasive's legitimate business interests.  As a sales representative, Defendant received neXus' and NuVasive's confidential information and specialized training,

**COMPLAINT - 4**

was given access to their collective established customer base, and was charged with generating goodwill with new and existing customers on their behalf.

15. The temporal and geographic restrictions in the Agreement's nonsolicitation and noncompetition provisions are reasonable. The temporal restrictions are only one year after Defendant's neXus employment terminates; and the geographic restrictions are limited to the territories where Defendant marketed NuVasive's products on behalf of neXus.

16. NuVasive is a named third-party beneficiary of the Agreement, and, pursuant to Section 7.8, has "the right, power and authority to enforce" the Agreement.

17. Defendant's starting salary as a Spine Associate was less than $100,000, but the Offer Letter described how he would earn more than that amount after being promoted to Spine Specialist and participating in neXus' standard spine specialist compensation plan.

18. Defendant performed well as a Spine Associate. Accordingly, neXus offered him the opportunity for an August 1, 2019, promotion to Spine Specialist if he would move to Coeur d'Alene, Idaho, which he accepted. As Defendant was new to the area, when neXus promoted him to Spine Specialist, it agreed to pay him a $1,500 bonus and increased his salary to $8,333.33 per month until his earnings were sufficient for him to begin participating in neXus' spine specialist compensation program.

19. In January 2020, neXus paid Defendant a bonus in the amount of $2,000. As such, Defendant's annualized compensation for 2020 calculated on the date he separated from neXus exceeds $100,000.00.

20. Like all of neXus' Spine Specialists, Defendant's primary responsibilities were to build a deep knowledge of NuVasive's products and procedures, market NuVasive spine

products, establish relationships with surgeon-customers and hospital personnel, and support spine surgeries in which the surgeon-customer utilizes NuVasive's equipment and hardware.

21. In order to help Defendant succeed in his role as a Spine Specialist, neXus and NuVasive provided Defendant with proprietary training, and gave him access to their confidential information and established customers.

22. Defendant succeeded in his role as a Spine Specialist. He became the face of NuVasive and neXus to at least one surgeon-customer in his territory, and was set to begin participating in neXus' spine specialist compensation plan in July of 2020, which was earlier than neXus previously anticipated. Once placed on neXus' spine specialist compensation plan, even a conservative estimate of Defendant's compensation in his sales territory would nearly double the $100,000 threshold, which his annualized compensation already exceeded for 2020.

23. On May 31, 2020, Defendant quit his position with neXus and assumed a nearly identical role with Alphatec. On or about this date, he admitted to neXus' owner that he would support – on Alphatec's behalf – a June 4, 2020, surgery performed by his primary neXus/NuVasive surgeon-customer.

24. While Alphatec is one of NuVasive's direct competitors in the spinal hardware industry, unlike NuVasive, it does not offer a comprehensive set of products covering the entire panoply of spine surgeries. This is commonly referred to in the spinal hardware industry as not "carrying a full bag."

25. Because NuVasive's sales representatives "carry a full bag," NuVasive is able to be the exclusive provider of products utilized in potential spine surgeries, while Alphatec is not.

26. For this and other reasons, it is impossible for Alphatec sales representatives – like Defendant – to perform their job without constantly soliciting any existing and potential

**COMPLAINT - 6**

surgeon-customers to either: (i) utilize those product lines that Alphatec does carry and/or (ii) implement a piecemeal approach to hardware selection for their spine surgeries.[1]  Additionally, it is essentially impossible for any surgeon-customer to exclusively utilize Alphatec's products in the surgeries he or she performs.

27.   Upon information and belief, Defendant did, in fact, support the June 4, 2020, surgery performed by his primary neXus/NuVasive surgeon-customer.  Upon information and belief, Defendant intends to continue soliciting the business of this surgeon-customer as well as other surgeon-customers within his former neXus/NuVasive sales territory.

28.   neXus introduced Defendant to the surgeon-customer described in the preceding paragraphs.  Indeed, neXus provided Defendant with the opportunity to move to this area largely because it believed he would work well with this surgeon-customer.

29.   In a June 3, 2020, email, Defendant acknowledged that his Alphatec territory will include the surgeon-customer identified in paragraphs 23, 27, and 28 and another long-time surgeon-customer of neXus and NuVasive.  neXus and NuVasive attach a copy of this email as **Exhibit C**.

## COUNT I (Breach of Contract - Damages)

30.   Plaintiffs incorporate the allegations contained in paragraphs 1 through 29.

31.   The Agreement fully complies with Rev. Code Wash. 49.62.005, *et seq.*

32.   neXus performed all obligations imposed on it by the Agreement.

---

[1] A common example of the latter scenario is when a surgeon-customer implants a piece of hardware that Alphatec does not carry, but the sales representative solicits the surgeon-customer to utilize Alphatec's competitive screws to affix or otherwise support that implant rather than using the implant manufacturer's screws. Therefore, even though Alphatec does not carry all the necessary pieces of hardware, it is still earning revenue from the procedure. Absent an Alphatec sales representative – like Defendant – soliciting the surgeon-customer to use Alphatec's screws, Alphatec would earn no revenue from a surgery where the surgeon-customer used a competitor's implant.

**COMPLAINT - 7**

33. The nonsolicitation and noncompetition obligations contained in Section 4 of the Agreement are valid and enforceable. These obligations are supported by adequate consideration, and are reasonably limited both in time, to one year following termination of employment, and in geographic scope, to the four medical facilities in which Defendant worked as a Spine Specialist, and the surgeons who operate within those facilities. Pursuant to Rev. Code Wash. 49.62.020(b), the noncompetition obligation is enforceable because Defendant's earnings (i.e., his annualized compensation) on the date of his resignation exceeded $100,000.

34. Section 4.2 of the Agreement requires that, for one year after termination of his neXus employment, Defendant, within his former neXus/NuVasive territory:

- not represent, promote, or otherwise try to sell products that compete with NuVasive's products; and

- not solicit, directly or indirectly, neXus or NuVasive's customers to purchase products that compete with NuVasive's products.

35. As noted in **Exhibit C**, Defendant intends to breach Section 4.2 of the Agreement by supporting surgeries performed within his former neXus/NuVasive sales territory by two surgeon-customers neXus introduced to him. His doing so will harm neXus and NuVasive as they should be allowed a reasonable amount of time to fairly compete for those surgeon-customers' business without competing against the goodwill they paid Defendant to create with them.

### COUNT II (Breach of Contract - Injunctive Relief)

36. Plaintiffs incorporate the allegations contained in paragraphs 1 through 35.

37. If not enjoined, Defendant will continue to violate his noncompetition and nonsolicitation obligations, and unfairly compete against neXus and NuVasive. Accordingly, the Court should issue preliminary and permanent injunctions that preclude him from doing so.

**COMPLAINT - 8**

38.     neXus and NuVasive are likely to succeed on the merits of their claim that Defendant violated Section 4.2 of the Agreement. The noncompetition and nonsolicitation provisions comply with Washington law, are narrowly tailored to protect neXus' and NuVasive's legitimate business interests, and Defendant informed neXus of his intent to violate his obligations.

39.     neXus and NuVasive will suffer irreparable harm if the requested preliminary and permanent injunctions do not issue. Defendant is violating his noncompetition and nonsolicitation obligations by soliciting their customers in his former sales territory. His illegal actions jeopardize neXus' and NuVasive's relationships with those customers. As noted in **Exhibit C**, Defendant intends for his violations to be ongoing and continue to cause irreparable harm to neXus and NuVasive.

40.     Defendant acknowledged, in Section 7.2 of the Agreement, that violating his nonsolicitation and noncompetition obligations would cause immediate and irreparable harm, that the damages caused by his violations would be hard to measure, that any financial remedy for his violations would be incomplete, and that injunctive relief is an appropriate remedy for any such violations.

41.     The balance of equities tips in favor of issuing the requested injunction. The requested injunction will not unfairly burden Defendant as he will be free to promote spinal hardware on behalf of neXus' and NuVasive's competitors anywhere in the world other than the four medical facilities (and to the surgeon customers who operate there) within his former sales territory. On the other hand, not issuing the injunction will deprive neXus and NuVasive of their bargained for agreement that Defendant will not compete with them for one year in his former territory.

42. Issuing the requested injunctions is in the public interest, as the public has an interest in the enforcement of reasonable contracts and in fair competition.

43. neXus and NuVasive respectfully request that the Court issue a preliminary injunction which precludes Defendant from violating his noncompetition and nonsolicitation obligations for one year from the date the preliminary injunction issues, and that the injunction be made permanent.

## COUNT III (Attorney's Fees)

44. Plaintiffs incorporate the allegations contained in paragraphs 1 through 43.

45. Section 7.2 of the Agreement provides that "in any legal action or other proceeding in connection with this Agreement (e.g., to recover damages or other relief), the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs incurred."

46. In accord with Section 7.2, neXus and NuVasive respectfully request that the Court award them an amount equal to the reasonable attorneys' fees and expenses they incur in prosecuting this lawsuit.

## PRAYER FOR RELIEF

WHEREFORE, neXus and NuVasive pray that this Court enter judgment against Defendant, and award them the following relief:

A. a preliminary injunction which precludes Defendant from violating the terms of his noncompetition and nonsolicitation obligations and that the injunction be made permanent;

B. compensatory damages in an amount to be determined at trial;

C. pre- and post- judgment interest;

D. the reasonable attorneys' fees and costs they incur in prosecuting this action; and

**COMPLAINT - 10**

E. such other and further relief the Court deems just and proper.

DATED this 26th day of June, 2020

        LAKE CITY LAW GROUP PLLC


        /s/ *Peter C. Erbland*
        PETER C. ERBLAND
        KATHARINE B. BRERETON


        **GULLETT SANFORD ROBINSON & MARTIN, PLLC**

        Christopher W. Cardwell (*pro hac vice* forthcoming)
        Mary Taylor Gallagher (*pro hac vice* forthcoming)
        M. Thomas McFarland (*pro hac vice* forthcoming)

        *Attorneys for Plaintiffs*

**COMPLAINT - 11**