PETER C. ERBLAND, ISBA #2456
perbland@lclattorneys.com
KATAHRINE BRERETON, ISBA #9583
kbrereton@lclattorneys.com
Lake City Law Group PLLC
435 W. Hanley Ave., Suite #101
Coeur d'Alene, ID 83815
T: 208.664.8115
F: 208.664.6338

Christopher W. Cardwell, TSBA #019751 (*pro hac vice*)
Mary Taylor Gallagher, TSBA #021482 (*pro hac vice*)
M. Thomas McFarland, TSBA #033432 (*pro hac vice*)
GULLETT SANFORD ROBINSON & MARTIN, PLLC
150 Third Ave. South, Suite 1700
Nashville, TN 37201
615.244.4994 (Telephone)
615.256.6339 (Facsimile)
ccardwell@gsrm.com
mtgallagher@gsrm.com
tmcfarland@gsrm.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NUVASIVE, INC. & <br> NEXUS SURGICAL INNOVATIONS, INC. <br><br> Plaintiffs, <br><br> v. <br><br> MATT ROBINS <br><br> Defendant. | Case No. 2:20-cv-00328-DCN <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 1**

811918.3/020200564

Through their counsel of record, and for their Memorandum in Support of their Motion for Preliminary Injunction, Plaintiffs, NuVasive, Inc. ("NuVasive") and neXus Surgical Innovations, Inc. ("neXus" or "neXus Surgical") (collectively, "Plaintiffs"), state that:

## I.   INTRODUCTION

This case arises from a sales representative for a medical device company violating the noncompetition and nonsolicitation obligations he owes to his former employer and its principal. Absent an injunction, Defendant and his new employer will be able to unfairly compete with neXus/NuVasive for the business of their customers that they developed and – in at least one occasion – handpicked Defendant to support.

## II.   STATEMENT OF RELEVANT FACTS[1]

NuVasive is a medical device company focused on the design, development, and marketing of products for the surgical treatment of spinal disorders. (Compl., Dkt. 1, ¶ 3).[2] NuVasive markets its products through its exclusive, highly-trained sales force, consisting of directly-employed sales personnel and exclusive sales agents (which NuVasive refers to as "distributors"). (Id. at ¶ 4; Decl. J. English, attached as **Exhibit 2**, ¶¶ 2-3).[3] NeXus is one of NuVasive's exclusive sales agents with a sales territory encompassing all or part of the states of Washington, Montana, Utah, Wyoming, and Idaho. (Compl., Dkt. 1, ¶ 4)

---

[1] Plaintiffs anticipate petitioning the Court for leave to conduct early, targeted discovery as to the precise extent of Defendant's contractual violations, but they set forth the facts of which they are currently aware.

[2] The Complaint allegations NuVasive cites and relies upon in this Memorandum are independently verified by Derek Mulgrew, neXus' sole shareholder and president. (Decl. D. Mulgrew, attached as **Exhibit 1**, ¶ 3)

[3] John English is NuVasive's Vice President, Global Professional Affairs and Distributor Engagement and Chairman of its Corporate Grants Committee. (**Exhibit 2**, Decl. J. English, ¶ 2).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 2**

811918.3/020200564

The spinal hardware industry is highly competitive. (Id. at ¶ 9). Industry participants entrust their sales personnel with their confidential and proprietary information, give them access to their established customer base, and often provide them with specialized and proprietary training. (Id.) As such, it is customary in this industry for participants to require their sales representatives to agree to and sign employment agreements containing confidentiality, noncompetition, and nonsolicitation provisions as a condition of their engagement with the company. (Id.)

NuVasive requires all of its distributors to subject their principals and their sales representatives to "Compliance Agreements" that contain restrictive covenants (including noncompetition and nonsolicitation provisions) that are similar to the restrictions it imposes on its directly-employed sales representatives. (**Exhibit 2**, Decl. J. English, ¶ 3). The industry standard for the length of noncompetition and nonsolicitation obligations is one to two years. (**Id.** at ¶ 4). NuVasive and neXus believe that, under typical circumstances—in which separated sales personnel comply with their restrictive covenants—one year is an appropriate temporal limitation because it provides a new sales representative an appropriate amount of time to earn the trust and confidence of a surgeon-customer and fairly compete with the former sales representative in the customer account. (**Id.** at ¶ 5; **Exhibit 1**, Decl. D. Mulgrew, ¶ 9).

A. <u>NeXus and Defendant entered into a Compliance Agreement that controls the relationship between them and to which NuVasive is an express, third-party beneficiary.</u>

Defendant, who possessed no previous experience in the spinal device industry, commenced employment with neXus as a Spine Associate – an entry-level sales position – on January 7, 2019, in Salt Lake City, Utah. (Compl., Dkt. 1, ¶ 10). As a condition of his employment by neXus, Defendant agreed to and executed a Confidential Information, Inventions,

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 3**

811918.3/020200564

Nonsolicitation and Noncompetition Agreement (the "Agreement").  (Id. at ¶ 11).[4]  NeXus expressly referenced the Agreement in its December 18, 2018, offer letter (the "Offer Letter") of employment to Defendant and enclosed a copy of the Agreement for Defendant's review.[5]  (Id. at ¶ 12; Dkt. 1-1, p. 2).  After receiving the Offer Letter and the Agreement, Defendant accepted neXus' offer of employment on December 20, 2018.  (Compl., Dkt. 1, ¶ 12).  The Agreement imposes certain reasonable post-employment obligations on Defendant – including noncompetition and nonsolicitation obligations – stating in relevant part:

> During the Term and for one year after the end of the Term, I will not represent, promote or otherwise try to sell within any territory I served for neXus Surgical any lines or products that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory and I will not solicit (directly or indirectly) any current or former customers of neXus Surgical or NuVasive to purchase any products or lines that, in neXus Surgical's reasonable judgment, compete with NuVasive Products or other products represented by neXus Surgical within that territory.  The one (1) year, post-employment period during which the restrictions of this Section are applicable shall toll for any period of time in which I am not in compliance with my obligations.

(Id. at ¶ 13).  Additionally, NuVasive is a named third-party beneficiary of the Agreement and possesses "the right, power and authority to enforce" it.  (Id. at ¶ 16).  Throughout his engagement with neXus, Defendant received NuVasive's and neXus' confidential/proprietary information and specialized training, was given access to their established customer base, and was charged with generating goodwill with neXus' and NuVasive's new and existing customers on their behalf.  (Id. at ¶ 14).  As such, the Agreement's restrictive covenants provisions are reasonably tailored to protect neXus' and NuVasive's legitimate business interests.  (Id. at ¶ 15).

---

[4] The Agreement is governed by Washington law.  (Compl., Dkt. 1, ¶11; Dkt. 1-1, § 7.5).

[5] The Offer Letter also detailed how, upon Defendant's promotion to Spine Specialist, he would be compensated in excess of $100,000 per year pursuant to neXus' spine specialist compensation plan.  (Compl., Dkt. 1, ¶ 17).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 4**

**B. NeXus promotes Defendant and introduces him to its established customer base in eastern Washington and northern Idaho.**

Defendant performed well in his role as a Spine Associate, and on August 1, 2019, was offered promotion to Spine Specialist if he relocated to Coeur d'Alene, Idaho. (Id. at ¶ 18). Defendant accepted the promotion, and his compensation was increased to in excess of $100,000 (in W-2 wages) per year. (Id. at ¶¶ 18-19; **Exhibit 1**, Decl. D. Mulgrew, ¶ 4). In his new role of Spine Specialist, neXus tasked Defendant with building a deep knowledge of NuVasive's products and procedures, marketing NuVasive's products, establishing relationships with surgeon-customers and hospital personnel, and supporting spine surgeries in Defendant's new market. (Compl., Dkt. 1, ¶ 20). In fact, neXus' owner handpicked Defendant to service the account of one of its primary surgeon-customers in Coeur d'Alene. (**Exhibit 1**, Decl. D. Mulgrew, ¶ 6). In order to help Defendant succeed as a Spine Specialist, neXus and NuVasive provided Defendant with proprietary training and gave him access to their confidential information and established customer base in Spokane, Post Falls, and Coeur d'Alene. (Id. at ¶ 6, 21).[6] With neXus' and NuVasive's assistance, Defendant succeeded in his role as a Spine Specialist becoming the face of neXus and NuVasive to the surgeon-customers within his territory. (Id. at ¶ 22).

**C. Defendant abruptly resigns from his neXus employment, immediately joins one of NuVasive's primary competitors, repudiates his contractual obligations, and begins immediately soliciting his former NuVasive/neXus customers on behalf of his new employer in violation of those contractual obligations.**

On Sunday, May 31, 2020, Defendant abruptly resigned his neXus employment – without notice – and assumed a nearly identical role with one of NuVasive's competitors, Alphatec Spine,

---

[6] The specific medical facilities within Defendant's sales territory were: (i) MultiCare Deaconess Hospital (Spokane); (ii) MultiCare Valley Hospital (Spokane); (iii) Northwest Specialty Hospital (Post Falls); and Kootenai Medical Center (Coeur d'Alene), along with the surgeon customers who operate at these facilities. (Compl., Dkt. 1, ¶ 6).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 5**

Inc. ("Alphatec"). (Id. at ¶ 23). Around this time, Defendant communicated to neXus' owner that he would not be adhering to the contractual obligations he owes to neXus and NuVasive, and that on June 4, 2020, he intended to support – on Alphatec's behalf – a spine surgery in Coeur d'Alene performed by his primary NuVasive/neXus surgeon-customer, Dr. Daniel J. Blizzard. (Id.; **Exhibit 1**, Decl. D. Mulgrew, ¶ 5). NeXus expended significant time and effort developing its and NuVasive's relationship with Dr. Blizzard before neXus' president and sole shareholder handpicked Defendant to service his account. (**Exhibit 1**, Decl. D. Mulgrew, ¶ 6). Indeed, neXus introduced Defendant to Dr. Blizzard, and the primary reason it offered him the promotion and opportunity to relocate to this market is because it believed the two would work well together. (Compl., Dkt. 1, ¶ 28).

On June 3, 2020, Defendant acknowledged in writing that his Alphatec sales territory will include Dr. Blizzard (as well as another long-time surgeon-customer of neXus and NuVasive). (Id. at ¶ 29). Consistent with his acknowledgement, Defendant recently supported a surgery in which one of his former NuVasive/neXus surgeon-customers within his former sales territory utilized Alphatec's products. (**Exhibit 1**, Decl. Mulgrew, ¶ 7).

### D. **It is functionally impossible for an Alphatec sales representative to perform his or her job functions without constantly soliciting surgeons on its behalf.**

While Alphatec is one of NuVasive's direct competitors, it does not offer a comprehensive set of products covering the entire range of spinal procedures. (Compl., Dkt. 1, ¶ 24). This is commonly referred to as not "carrying a full bag." (Id.) Since NuVasive's sales professionals "carry a full bag," they are able to be the exclusive provider of products utilized in potential spinal surgeries, while Alphatec is not. (Id. at ¶ 25). Accordingly, Alphatec sales representatives – like Defendant – cannot perform their jobs without constantly soliciting existing and potential surgeon-

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 6**

customers to either: (i) utilize only those product lines that Alphatec carries; or (ii) implement a piecemeal approach when selecting hardware for their spine surgeries. (Id. at ¶ 26). A common example of this piecemeal approach occurs when an Alphatec sales representative solicits a surgeon-customer to utilize Alphatec's competitive screws to affix or otherwise support an implant that Alphatec does not carry. (Id. at ¶ 26 n.1).

### III. PRELIMINARY INJUNCTION STANDARD

Federal Rule of Civil Procedure 65 permits courts to issue preliminary injunctions to prevent immediate and irreparable injury. A plaintiff seeking a preliminary injunction must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Preliminary injunctions serve to "preserve the status quo ante litem pending a determination of the action on the merits." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980). Movants must carry their burden by a clear showing. *Towery v. Brewer*, 672 F.3d 650, 657 (9th Cir. 2012).

### IV. A PRELIMINARY INJUNCTION SHOULD ISSUE

A preliminary injunction should issue because each of the requisite elements is present in this case. More specifically, the Court should issue a preliminary injunction which precludes Defendant from violating the noncompetition and nonsolicitation obligations contained in his neXus Agreement.

#### A. Plaintiffs are likely to succeed on the merits.

Plaintiffs are likely to succeed on the merits of this action because the Agreement's restrictive covenants are enforceable and Defendant is violating them (and will continue to do so

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 7**

if not enjoined). Indeed, Defendant's representations – contemporaneous with his resignation from neXus – that he intended to immediately begin soliciting (at least) his primary NuVasive/neXus surgeon-customer, his post-resignation acknowledgement that his Alphatec sales territory will include his NuVasive/neXus surgeon-customers, and his supporting of a June 4, 2020, surgery by that primary NuVasive/neXus surgeon-customer make clear that Defendant will not abide by his contractual obligations unless enjoined.

Accordingly, Plaintiffs are likely to succeed on the merits – thereby satisfying this first requirement for preliminary injunctive relief – so long the restrictions are enforceable under Washington law, which involves a consideration of the following three factors, whether: (i) the restraint is necessary for the protection of NuVasive's and neXus' business and goodwill; (ii) the restraint imposes upon Defendant any greater restraint than reasonably necessary to secure NuVasive's and neXus' goodwill; and (iii) the degree of injury to the public is such loss of the service and skill of Defendant as to warrant nonenforcement of the restrictive covenant. *Knight, Vale & Gregory v. McDaniel*, 37 Wash. App. 366, 369, 680 P.2d 448, 452 (1984) (citing *Racine v. Bender*, 141 Wash. 606, 611-12, 252 P. 115, 117 (Wash. 1927)). Finally, the Agreement's restrictive covenants are enforceable against Defendant because the requirements of Washington's recently-enacted noncompete law, RCW §§ 49.62.005, *et seq.*, are met in this instance.

> i. **The Agreement's noncompetition and nonsolicitation covenants are necessary for the protection of Plaintiffs' business and goodwill.**

Plaintiffs' business interests and goodwill protected by the Agreement's noncompetition and nonsolicitation covenants are evident and support their enforcement under Washington law. NuVasive and neXus have "a legitimate interest in protecting [their] existing client base from depletion by a former employee." *Perry v. Moran*, 109 Wash.2d 691, 700, 748 P.2d 224, 229

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 8**

(1987) (enforcing an accounting firm's noncompetition agreement preventing an employee from working with her former clients, even if no longer clients of the firm, for a year and a half after employee's departure). As the Washington Supreme Court succinctly held in *Perry*:

> The essential purpose of the post-employment restraint . . . is not to prevent the competitive use of the unique personal qualities of the employee – either during or after the employment – but to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment.

109 Wash.2d at 702, 748 p.2d at 230 (quoting Blake, *Employee Agreements Not To Compete*, 73 Harv. L. Rev. 625, 647 (1960)).

Restraints – such as those provided for in the Agreement – are particularly necessary when the former employee – such as Defendant – has an unfair advantage "by reason of personal contact with the employer's patrons or customers" and/or the "acquisition of information 'as to the nature and character of the business and the names and requirements of the patrons or customers' during his or her employment." *Copier Specialist v. Gillen*, 76 Wash. App. 771, 774, 887 P.2d 919, 920 (1995) (quoting *Wood v. May*, 73 Wash.2d 307, 310, 438 P.2d 587, 589 (1968)). "Applying these principles, Washington courts have typically looked favorably on restrictions against working with an employee's former clients or customers." *Amazon.com, Inc. v. Powers*, Case No. C12-1911RAJ, 2012 U.S. Dist. LEXIS 182831, at *23 (W.D. Wash. Dec. 27, 2012). "Generally speaking, time-limited restrictions on business with former clients or customers survive scrutiny in Washington." *Id.* at **23-24 (citing *Knight*, 37 Wash. App. at 368-69, 680 P.2d at 451-52 (declining to invalidate a three-year restriction on accountant working with former clients)); *Pac. Aerospace & Elecs., Inc. v. Taylor*, 295 F. Supp. 2d 1205, 1218 (E.D. Wash. 2003) (finding two-year restriction on solicitation of former customers to be reasonable as a matter of law); *Seabury & Smith, Inc. v. Payne Fin. Group, Inc.*, 393 F. Supp. 2d 1057, 1063 (E.D. Wash. 2005) (finding

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 9**

one-year restriction on working with former clients to be reasonable as a matter of law); *see also Labor Ready, Inc. v. Williams Staffing, LLC*, 149 F. Supp. 2d 398, 408 (N.D. Ill. 2001) (applying Washington law, upholding one-year ban on working with former customers)).

The Agreement's noncompetition and nonsolicitation covenants are necessary to protect NuVasive's and neXus' business interests and customer goodwill. They are limited to "the territory [Defendant] served for neXus Surgical" and "any current or former customers of neXus Surgical or NuVasive" respectively. (Compl., Dkt. 1, ¶ 13). This is precisely the type of restriction that courts uphold as reasonable under Washington law because it is expressly tailored to NuVasive's and neXus' customers.[7] Defendant became the "face" of NuVasive and neXus to these client accounts – including Dr. Blizzard – and enforcement of the Agreement's restrictive covenants protects NuVasive's and neXus' business and their goodwill developed with those accounts.[8] (Compl., Dkt. 1, ¶¶ 6, 20, 22); *see Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1397 (W.D. Wash. 2019) (holding with "little difficulty" that legitimate business interests and goodwill support enforcement of restrictive covenants where the defendant interacted with plaintiff's customers, built relationships with them, gained insight into their business needs, and negotiated contracts with them). Indeed, while employed by neXus, Defendant was "engaged in a position where confidence is the basis of the relation between" himself and his surgeon-customers, and anything short of full enforcement of the Agreement permits him to disregard

---

[7] Since the "territory [Defendant] served for neXus Surgical" consists of four medical facilities and the surgeons who operate there, this restriction is, in fact, limited to Defendant's former NuVasive/neXus clients. (Compl., Dkt. 1, ¶ 6).

[8] Enforcing similar restrictions in *Perry*, the Washington Supreme Court detailed the two "unpleasant alternatives" that would result if such covenants are not upheld: (i) the constant rotation of service-providing employees to limit employee-client contact as much as possible; or (ii) constant management supervision and monitoring so that the client looks to management, rather than the employee for solutions. *Perry*, 109 Wash.2d at 700-01, 748 P.2d at 229. "It is readily apparent that forcing such courses of conduct upon an employer is costly, inefficient and would lead to unsatisfactory firm-client relationships. No rule of law should force employers into such actions." *Id.*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 10**

811918.3/020200564

NuVasive's and neXus' rights and "visit ruin upon [them]." *Perry*, 109 Wash.2d at 698, 748 P.2d at 228-29 (quoting *Racine*, 141 Wash. at 610-11, 252 P.2d at 116). In sum, the Agreement's restrictive covenants satisfy the first prong of reasonableness and should be enforced.

> ii. **The Agreement's restrictive covenants impose no greater restraint on Defendant than is reasonably necessary to secure Plaintiffs' business and goodwill.**

Next, the Agreement's restrictive covenants impose no greater restraint on Defendant than necessary to protect Plaintiff's business in goodwill because they are expressly limited to one year following his departure from neXus and to the four (4) medical facilities he serviced on neXus' and NuVasive's behalf. As Mr. English testifies in his declaration, a one year restrictive period is appropriate in this scenario because: (i) much of the confidential information (including product pipeline information and pricing) is either disclosed or grows stale after a year; and (ii) critically, this time period will provide Plaintiffs the opportunity to earn the trust and confidence of Defendant's former customers necessary to fairly compete with him. (**Exhibit 2**, Decl. J. English, ¶ 5; *see also* **Exhibit 1**, Decl. D. Mulgrew, ¶ 10). Plaintiffs are not seeking to prohibit Defendant from working in the spinal hardware industry; nor are they seeking to prohibit Defendant from working for Alphatec, its direct competitor. Plaintiffs only seek to prohibit Defendant (for one year) from soliciting and selling to the same customers that he solicited and sold to on their behalf so that they are afforded that to which they are contractually entitled—one year to reestablish the relationships necessary to properly compete with Defendant for the business of his former customers.[9]

---

[9] Washington courts (and those applying Washington law) routinely enforce restrictive covenants more onerous than the Agreement's. *See Knight*, 37 Wash. App. at 368-71, 680 P.2d at 451-52 (three-year restriction on former clients upheld); *Pac. Aerospace & Elecs.*, 295 F. Supp. 2d at 1218 (two-year restriction on former customers upheld); *Seabury & Smith*, 393 F. Supp. 2d at 1063 (one-year restriction on former clients upheld); *Labor Ready*, 149 F. Supp. 2d at 408; (upholding one-year ban on former customers). Indeed, the Western District of Washington enjoined a defendant

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 11**

In sum, the Agreement imposes no greater restraints upon Defendant than necessary to secure Plaintiffs' business and goodwill. As such, they are enforceable under Washington law.

### iii. The Agreement's restrictive covenants impose no injury to the public warranting nonenforcement.

Enforcement of the Agreement's restrictive covenants will not injure the public in any way—much less to the degree that "such loss of the service and skill of [Defendant] as to warrant nonenforcement of the covenant[s]." *E.g. Knight*, 37 Wash. App. at 369, 680 P.2d at 452 (citing *Racine*, 141 Wash. at 611-12, 252 P. at 117). Respectfully, although Defendant is skilled at representing spinal products – due largely, if not entirely, to the training provided by Plaintiffs – the public will not be deprived of anything should the Court issue the requested injunction. *See id.* ("Although defendants may be exceptionally skilled, the service they offer is neither unique nor incomparable."). Indeed, the public interest will actually be advanced in this instance because it "benefits from the enforcement of business contracts, including reasonably necessary non-compete agreements." *Metropcs Pa., LLC v. Arrak*, No. C15-0769JLR, 2015 U.S. Dist. LEXIS 150634, at *13 (W.D. Wash. Nov. 4, 2015).[10]

### iv. The Agreement's noncompetition provision satisfies the requirements of Revised Code of Washington §§ 49.62.005, *et seq*.

Finally, the Agreement's noncompetition restrictive covenant satisfies Washington's recently-enacted legislation governing noncompetition – but not nonsolicitation – agreements.

---

from distributing products that compete with the plaintiff's for one year anywhere in the world. *See generally Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 U.S. Dist. LEXIS 58839 (W.D. Wash. May 3, 2016).

[10] To the extent the Court is concerned about Idaho's public interest, its courts also adhere to this tenant. *See MWI Veterinary Supply Co. v. Wotton*, 896 F. Supp. 2d 905, 614 (D. Idaho 2012) ("The public interest lies in enforcing contractual agreements and so favors the granting of an injunction here."); *Navex Global, Inc. v. Stockwell*, No. 1:19-cv-00382-DCN, 2019 U.S. Dist. LEXIS 206814, at *29 (D. Idaho Nov. 25, 2019) ("General speaking then, the public interest favors the enforcement of noncompete agreements, as long as they are not overly broad.").

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 12**

811918.3/020200564

The statue, which became effective January 1, 2020, requires that: (i) the employer disclose the terms of the covenant in writing no later than the time of acceptance of the offer of employment; (ii) the employee's earnings, when annualized, exceed $100,000 per year."[11]  RCW § 49.62.020. It also provides for a rebuttable presumption that noncompetition covenants exceeding eighteen months are unreasonable and unenforceable.  Each of these requirements are satisfied here because: (i) Defendant received the Agreement with his offer letter prior to accepting neXus' offer of employment; (ii) his W-2 earnings, when annualized and calculated on May 31, 2020, exceeded $100,000; and (iii) the restrictive period extends only for one year following Defendant's resignation. (Compl., Dkt. 1, ¶¶ 11-13, 15, 19; **Exhibit 2**, Decl. D. Mulgrew, ¶ 4).

Because the Agreement's restrictive covenants satisfy each requirement as to enforceability under Washington law, Plaintiffs are likely to succeed on the merits of their breach of contract claim against Defendant, and this prong weighs in favor of issuing a preliminary injunction.

### B. **Plaintiffs will suffer irreparable harm absent a preliminary injunction.**

Turning to the next element of the test for determining whether to issue a preliminary injunction, NuVasive and neXus are being irreparably harmed – which shall continue – if the injunction does not issue.  Defendant, upon his resignation from neXus, indicated he intended to immediately begin soliciting the business of his primary NuVasive/neXus surgeon-customer – Dr. Blizzard – and supporting surgeries he performed on behalf of Alphatec.  (Compl., Dkt. 1, ¶ 23). Defendant then confirmed, in writing, that his Alphatec sales territory includes Dr. Blizzard and

---

[11] "Earnings" means the compensation reflected as W-2 wages that is paid to the employee over the prior year, or portion thereof for which the employee was employed, annualized and calculated as of the earlier of the date of enforcement of the noncompetition covenant is sought or the date of separation from employment. RCW § 49.62.010(1).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 13**

811918.3/020200564

another of Plaintiffs' longtime surgeon-customers.  (Id. at ¶ 29, Ex. C).  And Defendant did, in fact, support a surgery Dr. Blizzard recently performed in which Alphatec's products were used.  (**Exhibit 2**, Decl. D. Mulgrew, ¶ 7).

Defendant's actions are "precisely the type of irreparable harm that non-compete and/or non-solicit agreements are intended to prevent."[12]  *Abdou v. Davita*, 734 Fed. Appx. 506, 507 (9th Cir. 2018); *see also Moyer*, 417 F. Supp. 3d at 1404 (irreparable harm present if defendant solicits his former customers); *Powers*, 2012 U.S. Dist. LEXIS 182831, at *35 ("Irreparable harm is a likely consequence of permitting an employee to pursue his former customers in violation of a valid restriction.  The monetary damage from loss of a customer is difficult to quantify, and the damage to goodwill even more so."); *MetroPCS N.Y., LLC v. 35-46 Broadway, Inc.*, No. C17-1554RSM, 2018 U.S. Dist. LEXIS 120076, at *9 (W.D. Wash. Jul. 18, 2018) (finding "the continued diversion of customers" constituted irreparable harm); *Organo Gold*, 2016 U.S. Dist. LEXIS 58839, at **27-28; *Oberto Sausage Co. v. JBS S.A.*, No. C10-2033 RSL, 2011 U.S. Dist. LEXIS 33077, at **20-21 (W.D. Wash. Mar. 11, 2011).  Indeed, the *Powers* Court, even in the absence of "direct evidence" that he intended to solicit his former customers, enjoined the defendant because "[g]iven his opposition to Amazon's motion, however, the court finds it likely that [defendant] would approach at least some customers (or some customers would approach him)" if not enjoined.  *Powers*, 2012 U.S. Dist. LEXIS 182831, at **35-36.

---

[12] Defendant expressly acknowledged that his breach of the Agreement's restrictive covenants would result in immediate and irreparable harm. (Compl., Ex. B, Dkt. 1-2, § 7.2 ("I also acknowledge that if I do not abide by my obligations in this Agreement, neXus Surgical will suffer immediate and irreparable harm, and that the damage to neXus Surgical will be difficult to measure and financial relief will be incomplete. Accordingly, neXus Surgical will be entitled to injunctive relief and other equitable remedies in the event of a material breach by me of any obligations under this Agreement.")).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 14**

Respectfully, the existence of irreparable harm – both current and continuing – in this case is not a close call.  Defendant will continue violating the Agreement's restrictions if not enjoined by this Court, which will irreparably harm neXus and NuVasive.[13]

**C.  The balance of equities weigh in favor of issuing an injunction.**

Next, the balance of equities weighs in favor of enjoining Defendant.  Defendant will not be harmed via the issuance of an injunction because he will not be prohibited from gainful employment, even with Alphatec.  He will only be prohibited from soliciting and servicing his former NuVasive/neXus clients.  On the other hand, Plaintiffs will forever lose the benefit of the Agreement's bargain if Defendant is not enjoined as they will not be permitted the appropriate time period to reestablish their relationships with Defendant's former surgeon-customers in order to fairly compete with him.  In *Navex Global*, this Court enjoined a Defendant from violating his restrictive covenants under circumstances more dire than those present here.  2019 U.S. Dist. LEXIS 206814, at **27-28.  Defendant "had the opportunity to seek employment elsewhere, yet he elected to sign the Agreement and work for [Plaintiffs]."  *Id.* at *28.  Put simply, "equity cannot be used to relieve [Defendant] from the consequences of something he knew he was getting into."  *Id.*  The balance of equities weighs in Plaintiffs' favor, and an injunction should issue.

**D.  Issuing the injunction is in the public interest.**

The final prong required for the issuance of a preliminary injunction is present here for the same reasons that the public interest is benefited by the proper enforcement of restrictive covenants.  *See* Section IV(A)(iii), *supra*.  The public benefits by enforcing valid contractual obligations, and the Court should issue an injunction in this case.

---

[13] Indeed, Defendant's intent appears to be bolstered, at least in part, on Alphatec's incorrect representations that the Agreement's restrictions are not enforceable. (**Exhibit 2**, Decl. D. Mulgrew, ¶ 13).

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 15**

## V.     CONCLUSION

In conclusion, this is a straightforward case involving Defendant's breaches of his enforceable noncompetition and nonsolicitation obligations. Respectfully, there is no good reason for Defendant to ignore these restrictive covenants. Accordingly, the Court should issue a preliminary injunction which prohibits Defendant from violating his restrictive covenants for one year.

DATED this 12th day of August, 2020

                                                  LAKE CITY LAW GROUP PLLC

                                                  /s/ *Katharine B. Brereton*
                                                  PETER C. ERBLAND
                                                  KATHARINE B. BRERETON

                                                  GULLETT SANFORD ROBINSON & MARTIN, PLLC

                                                  Christopher W. Cardwell (*pro hac vice*)
                                                  Mary Taylor Gallagher (*pro hac vice*)
                                                  M. Thomas McFarland (*pro hac vice*)

                                                  *Attorneys for Plaintiffs*

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 16**

## CERTIFICATE OF SERVICE

      I CERTIFY that on the 12th day of August, 2020, I filed the foregoing with the Clerk of the Court electronically through the CM/ECF system, which will send notice of electronic filing to the registered participants as identified on the NEF.  I further certify that the individuals were served via the methods indicated below:

| *Via U.S. Mail, postage prepaid and email*: | *With courtesy copy via U.S. Mail, postage prepaid and email*: |
|---|---|
| Matt Robins<br>809 E. Mullan Avenue<br>Coeur d'Alene, Idaho 83814<br>Mrobins2@gmail.com | William M. Symmes<br>Matthew W. Daley<br>422 West Riverside Avenue, Suite 1100<br>Spokane, Washington 99201<br>wms@witherspoonkelley.com<br>mwd@witherspoonkelley.com |

      /s/ *Katharine B. Brereton*
      Attorney for Plaintiffs

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION - 17**